# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JONATHAN WILLIAMSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04 C 4051 |
| v. ) | |
| ) | Honorable Joan B. Gottschall |
| DENK & ROCHE BUILDERS, INC., ) | |
| ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Jonathan Williamson, who is African-American, sued his former employer, Denk & Roche Builders, Inc. ("Denk & Roche"), alleging that Denk & Roche subjected him to a racially hostile work environment in violation of 42 U.S.C. § 1981 ("Section 1981") (Count 1), retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") (Count 2) and Section 1981 (Count 3), and violated the EEO-1 Report filing requirement of Title VII (Count 4). Denk & Roche is a builder, with projects located primarily in suburban metropolitan Chicagoland. Denk & Roche hired Williamson, a carpenter who was primarily an interior trimmer, on July 12, 1998, and ultimately laid him off on December 14, 2004. Denk & Roche has moved for summary judgment, and separately moved for judgment.

In responding to Denk & Roche's motion, plaintiff barely makes an effort to present his arguments in a developed fashion. He fails to respond properly to Denk & Roche's Rule 56.1 statements and fails to respond directly to most (if not all) of Denk & Roche's arguments. Plaintiff essentially has merely restated the allegations in his complaint. Despite these failings, the court has done its best to analyze plaintiff's claims, as it has a duty to ensure that the moving party is indeed entitled to summary judgment. For the reasons explained below, Denk & Roche's motion for

summary judgment is granted and its motion for judgment is denied as moot.

## ANALYSIS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. The party opposing summary judgment may not rest upon the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

**Count 1: Hostile Work Environment Under Section 1981**

Claims under Section 1981 are analyzed using the same framework as Title VII claims. *Williams v. Waste Management of Ill.*, 361 F.3d 1021, 1028 (7th Cir. 2004). In order to survive summary judgment, a plaintiff alleging racial harassment must show that: (1) he was subjected to unwelcome harassment; (2) the harassment was based on race; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of the employee's employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability. *Williams*, 361 F.3d at 1028 (citing *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000)).

Plaintiff argues that the following comments created a racially hostile environment: (1) On March 21, 2003, Superintendent Ulick O'Reilly told plaintiff that "We have plenty of work in the

city. We even have work in the ghetto where you live."[1]; (2) Yrek, a fellow carpenter, told Williamson that on April 22, 2002, O'Reilly "had told him that it was time to get rid of the court monkeys[.]"; (3) On February 19, 2004, Williamson was on a jobsite where a port-a-john contained graffiti stating "All the way with KKK[.]"; (4) Sometime shortly before June 5, 2004, Williamson was on a jobsite where a port-a-john contained graffiti stating "What do you call a Black woman having an abortion? A crime stopper."; and (5) Sometime before March 2003, Caputo, a supervisor, while passing out paychecks, commented that Williamson probably did not need the money because of his "night-time hustle."[2]

Denk & Roche responds to plaintiff's allegations by arguing that, even when viewed in the light most favorable to plaintiff, these were isolated incidents that did not amount to a hostile work environment. While O'Reilly admitted using the work "ghetto" to plaintiff and stated that he defined the word as a part of the city "mostly inhabited by a minority" or "kind of an impoverished part of the city," he also asserted that he did not think Williamson lived in the ghetto and did not view the use of the word "ghetto" as offensive. In explaining his use of the phrase "court monkeys," O'Reilly admitted to having used the phrase on several occasions and asserted that he was referring

---

[1] While O'Reilly admits to using the word "ghetto," he claims that he said, "[I]t's too bad Don likes you so much. I have some work coming up, down in the ghetto that would be a little closer to home." For purposes of this motion, the court will assume that plaintiff's version is correct.

[2] Technically, plaintiff did not substantiate this alleged comment because he failed to include it in his statements of additional fact. Because Denk & Roche has included it in its Rule 56.1 statements, and because plaintiff specifically mentions it in his argument section, the court will consider it. Further, the court notes that defendant speculated that plaintiff may rely on additional grounds as the basis for his claim. Because none of these bases is mentioned by plaintiff in either his argument section or his statements of additional fact, they are waived. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

to carpenters who fail to come to work claiming they have to be in court. With respect to Caputo's comment about "night-time hustle," Caputo admitted to using the phrase "night-time hustle" on many occasions over the years when referring to the side jobs which many carpenters have. With respect to the two incidents involving racially offense graffiti at two different work sites, Denk & Roche put forward undisputed evidence that it does not control the port-a-johns on jobsites – the port-a-johns are owned and maintained by the general contractor of the jobsite. It is also undisputed that the port-a-johns are open and used by many other subcontractors and other visitors to the jobsite. The undisputed evidence also shows that Denk & Roche took steps to make sure the graffiti was removed from the port-a-johns.

As an initial matter, some of the evidence relied upon by Williamson cannot be considered by the court in analyzing the hostile work environment claim. First, the impact of the two incidents of racist graffiti in the portable toilets is countered by Denk & Roche's response in having the graffiti promptly removed from the jobsite as soon as Williamson told his supervisors about it. Despite Denk & Roche's arguments to the contrary,[3] the court will consider the racist comments in the portable toilets, as these comments were part of Williamson's hostile workplace environment claim. However, Denk & Roche may avoid liability on these comments if it took reasonable steps to remedy the situation as soon as it was informed of the racist graffiti. In this case, Williamson does not allege that the graffiti came from any supervisor at Denk & Roche. As such, non-

---

[3] Denk & Roche's reliance on *Hernandez v. HCH Miller Park*, 418 F.3d 732, 736 (7th Cir. 2005), to support its argument that the port-a-johns should not be considered because they were not directly controlled by Denk & Roche is misplaced. *Hernandez* is not applicable here as it was not a hostile work environment case. Further, an employer is potentially liable for acts that occur at its workplace, even when the employer does not directly control the actor. *See e.g., Dunn v. Washington Cty. Hosp.*, 429 F.3d 689 (7th Cir. 2005) (holding employer hospital liable for actions of independent contractor who sexually harassed employee).

supervisory harassment is actionable only where the plaintiff shows that the employer knew or should have known about the harassment and that it failed to take appropriate remedial action. *Cerros v. Steel Technologies, Inc.*, 398 F.3d 944, 952 (7th Cir. 2005). Denk & Roche presented undisputed evidence that it took steps to have the graffiti removed from the toilets as soon as Denk & Roche was aware of the graffiti's existence. Further, Williamson makes no argument that Denk & Roche's response to the graffiti was unreasonable. In fact, the undisputed evidence shows that after the second graffiti incident, Williamson drafted a thank you note in which he recognized that the graffiti was removed and thanked his supervisors for their "expedited successful collaborative effort of correcting the matter." In light of this, the two incidents of racist graffiti cannot be considered by the court in evaluating Williamson's hostile work environment claim. Further, supervisor Caputo's use of the phrase "night time hustle" when handing out paychecks is ambiguous; it does not have an obvious racial component, especially when viewed in light of the undisputed evidence that Caputo used this phrase with many employees, and there is no evidence suggesting that he used this phrase only with African-Americans. The court for these reasons cannot consider this comment in evaluating Williamson's hostile work environment claim.

In order for a plaintiff to survive summary judgment, he must show that the harassment he was subjected to was "severe" or "pervasive." Williamson undoubtedly was subjected to an offensive racist comment by O'Reilly when he said that Williamson lived near the "ghetto" (which O'Reilly does not deny saying), and by O'Reilly's indirect[4] racist comment that the company should

---

[4] While the court may consider the "through the grapevine" comment made by O'Reilly in which he used the phrase "court monkeys" to another employee, the impact of such a comment is lessened because it was not heard directly by Williamson. *Cowan v. Prudential Ins. Co. of Am.*, 141 F.3d 751, 758 (7th Cir. 1998) (the impact of second-hand harassment is not as great as harassment directed at plaintiff).

get rid of "court monkeys" (which O'Reilly also does not deny saying) made to another employee. While O'Reilly's racist comments are appalling, particularly in view of his supervisory role, these isolated comments, however insensitive, do not constitute the kind of "severe" or "pervasive" harassment necessary to withstand a motion for summary judgment. *See Ngeunjuntr v. Metropolitan Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998) (court must consider frequency and severity of discriminatory conduct, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it reasonably interferes with an employee's work performance); *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 977 (7th Cir. 2004) (workplace must be "hellish" to be actionable). In the end, Williamson was subjected to two isolated racist remarks that do not rise to the level required to prove a hostile work environment. Denk & Roche's motion for summary judgment is granted as to Count 1.

**Count 2: Retaliation Under Title VII**

A plaintiff bringing a retaliation claim can survive summary judgment in two ways: by means of either the direct or the indirect method. *Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Under the direct method, the plaintiff must establish a *prima facie* case by presenting direct evidence that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two. *Luckie v. Ameritech Corp*. 389 F.3d 708, 714 (7th Cir. 2004). Under the indirect or "burden-shifting" method, the plaintiff must establish that: (1) he engaged in statutorily protected activity; (2) he was performing his job according to his employer's legitimate expectations; (3) despite his satisfactory performance, he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity.

*Luckie*, 389 F.3d at 714. If the plaintiff succeeds in proving his *prima facie* case, the employer must offer a legitimate, noninvidious reason for the adverse employment action. *Hilt-Dyson v. City Of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). Once the employer has done so, the burden of production shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretextual in nature. *Id.*

Williamson has failed to present any meaningful explanation of (or evidentiary support for) his retaliation claim. In his argument section (which consists of three sentences), he fails to provide even a barebones explanation of what his statutorily protected activity was and what action Denk & Roche took against him in retaliation. He makes no attempt to satisfy the four necessary elements of the indirect method, and has likewise failed to put forward any direct evidence. Plaintiff's lone argument that his evidence of a hostile work environment also satisfies his burden on his retaliation claim is nonsensical. Williamson's Title VII retaliation claim accordingly fails. Denk & Roche's motion for summary judgment is granted as to Count 2.

**Count 3: Retaliation Under Section 1981**

As pointed out by defendant, the Seventh Circuit has made clear that a retaliation claim is not viable under Section 1981. *Hart v. Transit Management of Racine, Inc.*, 426 F.3d 863, 866 (7th Cir. 2005) (Section 1981, unlike Title VII, does not include a prohibition against retaliation). As a result, Denk & Roche's motion for summary judgment is granted as to Count 3.

**Count 4: Violation of EEO-1 Report Filing Requirement Under Title VII**

Plaintiff provides no legal support for his assertion that a private party may bring a claim for an alleged violation of the EEO-1 report filing requirement under Title VII. Only the Equal Employment Opportunity Commission or the Attorney General has the authority to seek redress in

7

the district court when an employer has failed to comply with the report filing requirements of Title VII. 42 U.S.C. § 2000e-8©; *Equal Employment Opportunity Commission v. Menard, Inc.*, No. 05-C-42-S, 2005 WL 1266458 (W.D. Wis. May 26, 2005) (EEOC brought lawsuit against employer for failure to file EEO-1 reports). For this reason, Denk & Roche's motion for summary judgment is granted as to Count 4.

## CONCLUSION

For the reasons explained above, Denk & Roche's motion for summary judgment is granted. Denk & Roche's motion for judgment is denied as moot. The court declines to award Denk & Roche attorney's fees for the preparation of this motion.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 11, 2006